Stanislaw NOWAK, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 96–2163.

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 1996.

Decided Aug. 30, 1996.

Royal F. Berg (argued), Chicago, IL, for
Petitioner.

Janet Reno, U.S. Attorney General, Office
of the United States Attorney General,
Washington, DC, Samuel Der–Yeghiayan,
Brian Perryman, Immigration & Naturaliza-
tion Service, Chicago, IL, Philemina Jones,
Stephen W. Funk (argued), Laura M. Fried-
man, Department of Justice, Civil Division,
Immigration Litigation, Washington, DC, for
Respondent.

Before POSNER, Chief Judge, and
COFFEY and EASTERBROOK, Circuit
Judges.

EASTERBROOK, Circuit Judge.

Stanislaw Nowak entered the United
States in 1987 as a visitor for pleasure.
When his visa expired he neither left nor
applied for an extension. Instead he kept his
head low until he was caught, and then he
asked for asylum. Nowak's theory was that
he had been, and would continue to be, per-
secuted in his native Poland for assisting the
Solidarity labor union. In August 1989, a
year before an immigration judge denied No-
wak's request for asylum, Tadeusz Mazow-
iecki, a leader of Solidarity, became Poland's
prime minister. In December 1990 Lech
Walesa, the head of Solidarity, was elected
the nation's president. Despite these devel-
opments, Nowak took an administrative ap-
peal. After waiting four years for Nowak's
lawyer to file a brief, the Board of Immigra-
tion Appeals dismissed the appeal for want of
prosecution. Two years later, represented
by new counsel, Nowak filed a petition for
judicial review, arguing that the Board
should have decided the appeal on the merits

notwithstanding the lack of a brief. Nowak also filed a motion to reopen before the Board and asks us to defer consideration of the petition for review until the Board acts. That step would indefinitely extend the automatic stay of deportation under 8 U.S.C. § 1105a(a)(3).

■ Immigration cases move at a snail's pace. We cannot fathom why the Board dawdled four years before dismissing Nowak's appeal, or why the INS permitted Nowak to remain in the United States two years thereafter when no petition for review had been filed. (Nowak filed the petition for review only after he had been taken into custody as a prelude to deportation.) People have but one life to live, and they are entitled to know as quickly as possible where they must live it. Nowak must have made many decisions since the immigration judge ordered him deported that will make readjustment to Poland more difficult. Uncertainty affects decisions about education, marriage, and employment, not only for the alien but also for the alien's family. Nowak now has a son who is a U.S. citizen. We will not contribute to the delay by postponing consideration of the petition for review. It may be that the INS will whisk Nowak from the United States if we deny the petition, but that is a lawful consequence of an order of deportation. Nowak may, or may not, have grounds for a stay of deportation while the Board considers his current petition. Any request for a stay should be determined under the criteria that govern that question; it is altogether inappropriate to preempt the subject by continuing an automatic stay of deportation that is linked to review of the original order. There is no limit to the number of petitions to reopen an alien may file. Often they are filed for no reason other than delay—and many more would be filed for that reason if courts rewarded them with automatic, and indefinite, stays of deportation. We shall proceed to decision.

■ Under 8 U.S.C. § 1105a(a)(1) an alien has "90 days after the date of the issuance of the final deportation order" to file a petition for review. Nowak took 701 days. He even waited 36 days after being taken into custody, until the eve of his outbound flight. His excuse is that his former attorney, Walter Zarnecki, did not receive a copy of the Board's final order. Nowak blames the Postal Service, although all Zarnecki's affidavit actually says is that he was unaware of the Board's decision and could not locate a copy in his files. That may be Zarnecki's problem rather than the Postal Service's. He was not exactly attentive to Nowak's case and must have lost Nowak's entire file; how else could he fail to file a brief for four years? But let us assume that Zarnecki never received notice. The statute does not start the 90 days from the time notice is sent or received. Time runs from "the date of the issuance of the final deportation order". *Stone v. INS,* —— U.S. ——, ——, 115 S.Ct. 1537, 1549, 131 L.Ed.2d 465 (1995), says that § 1105a(a)(1) is among the "jurisdictional" rules that "must be construed with strict fidelity to their terms" and that are "not subject to equitable tolling." See also Fed. R.App. P. 26(b), which forbids any extension of the time to seek review of an administrative order, unless a statute expressly authorizes that step. No statute provides that authority for immigration cases.

What this means is that aliens who distrust the Postal Service must check with the Board every so often, just as litigants in district court must check periodically with the clerk given Fed.R.Civ.P. 77(d), which provides: "Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure." The "except" clause refers to Rule 4(a)(6), under which a district court may extend the time for appeal in response to a motion filed within 180 days of the judgment if the losing party did not receive timely notice. Nowak long exceeded 180 days; he did not act within 7 days of learning that the Board had resolved his claim (another requirement of Rule 4(a)(6)); and of course Rule 4(a)(6) does not apply to administrative cases, governed as they are by Rule 26(b)'s unforgiving approach.

Before the adoption of Rule 4(a)(6) in 1991, several courts of appeals, including ours, sug-

gested that a district court might be entitled to vacate and reenter its judgment under Rule 60(b) when, despite · diligent effort, counsel was unable to ascertain the status of the case. See *Spika v. Village of Lombard,* 763 F.2d 282 (7th Cir.1985). Compare *Wilson v. Atwood Group,* 725 F.2d 255, 258 (5th Cir.1984) (en banc), and *Mizell v. Attorney General of New York,* 586 F.2d 942, 944–45 (2d Cir.1978), with *Polylok Corp. v. Manning,* 793 F.2d 1318 (D.C.Cir.1986). See also *Williams v. Hatcher,* 890 F.2d 993, 996 (7th Cir.1989) (holding that counsel's efforts did not justify vacatur and reentry); *DeRango v. United States,* 864 F.2d 520, 523 (7th Cir. 1988) (same); *In re Longardner & Associates, Inc.,* 855 F.2d 455, 464 (7th Cir.1988) (same). Even these obsolete cases offer Nowak no comfort: for six years Zarnecki did not lift a finger to ascertain the status of Nowak's appeal, and the Board was not asked to (and did not) vacate and reenter its decision to start a new 90–day period.

Nowak observes that *Zaluski v. INS,* 37 F.3d 72 (2d Cir.1994), held a petition for review timely when filed within 90 days after the Board mailed a copy to the attorney's correct address. *Ouedraogo v. INS,* 864 F.2d 376 (5th Cir.1989), likewise holds that the time does not begin until the INS sends proper notice. These cases deal with dispatch rather than receipt of notice. Neither suggests that the time is extended when the agency sends a notice that miscarries in the mails; indeed, both strongly imply the contrary, for they rest on the premise that, because a regulation requires the Board to send notice of its decisions, "the time for filing a review petition begins to run when the BIA complies with the terms of federal regulations by mailing its decision to petitioner's address of record." 864 F.2d at 378. Nowak does not deny that the Board mailed a timely notice to Zarnecki's address. At all events, *Zaluski* and *Ouedraogo* are inconsistent with the Supreme Court's understanding of § 1105a(a)(1). The time to file does *not* begin "when the BIA complies with the terms of federal regulations by mailing its decision to petitioner's address of record." It begins when the Board issues its order. An agency might have latitude to promulgate a regulation defining "issuance" as "service"

rather than "filing"—though even *Hill v. Hawes,* 320 U.S. 520, 64 S.Ct. 334, 88 L.Ed. 283 (1944), the origin of the vacatur-and-reentry device for permitting a belated appeal when the court does not give proper notice of judgments, did not go that far (and Hill was itself discarded by the 1946 amendment to Rule 77). But the Board has not equated "issuance" with "service," let alone with "receipt." *Stone* tells us to follow the statute slavishly, and we must act on that instruction rather than on the basis of contrary pre-*Stone* decisions.

The petition for review is dismissed for want of jurisdiction.