**Ramon E. TORRES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 97–1564.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 18, 1998.

Decided May 14, 1998.

Thomas C. Buchele, Tamara S. Klein, David A. Suess, Jenner & Block, Chicago, IL, for Petitioner.

Samuel Der-Yeghiayan, Immigration & Naturalization Service, Chicago, IL, David

M. McConnell, Joan E. Smiley, Karen Fletcher Torstenson, Kristal A. Marlow, Michelle Gluck, Linda S. Wendtland, Department of Justice, Civil Division, Immigration Litigation, Washington, DC, for Respondent.

Before POSNER, Chief Judge, and RIPPLE and KANNE, Circuit Judges.

POSNER, Chief Judge.

The petitioner, a citizen of Guatemala, came to the United States in 1989 on a visitor's visa. Wanting to remain, he made a sham marriage with an American citizen and applied for permanent residency in the United States. The nature of the marriage was discovered, and his application for permanent residency denied. He then petitioned for political asylum and withholding of deportation. These requests were denied, along with his request for voluntary departure in lieu of deportation, and he was ordered deported. On December 17, 1996, the Board of Immigration Appeals denied his appeal and entered a final order of deportation. On March 14, 1997, which was more than 30 days but fewer than 90 days after the Board's order, he filed in this court a petition to review the order. The INS asks us to dismiss the petition as untimely. On September 30, 1996, Congress had passed the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. 104–208, 100 Stat. 3009, amending the Immigration and Nationality Act. A few days later, on October 11, 1996, Congress had amended the reform act in the Extension of Stay in the United States for Nurses Act ("Nurses Act"), Pub.L. 104–302, 110 Stat. 3657. As amended by the Nurses Act, section 309(c)(4)(C) of the reform act reduces the time for filing petitions to review deportation orders from 90 days, as it had been under existing law, 8 U.S.C. § 1105a(a)(1), to 30 days, for all petitions filed more than 30 days after the enactment of the reform act, that is, after October 30, 1996. Recall that Torres did not file his petition for review until March of 1997. Under section 309(c)(4)(C), the deadline was January 16, 1997.

Torres argues that it would be a denial of due process of law to apply the

reduced period for filing a petition for review to his case, because Congress did not provide fair notice of the change in law. Torres is not a citizen, but of course the due process clauses are not limited to citizens, and the Supreme Court has held the requirements of due process of law applicable to deportation proceedings. *Japanese Immigrant Case,* 189 U.S. 86, 100–01, 23 S.Ct. 611, 47 L.Ed. 721 (1903); *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Batanic v. INS,* 12 F.3d 662, 666 (7th Cir.1993). And while an alien has no constitutional right to remain in the United States, and no constitutional right to judicial review of a denial of asylum, we may assume that if Congress confers on the alien a right to seek judicial relief from such a denial, as it has done, the deprivation of that right without due process of law infringes the alien's constitutionally protected liberty or property. Such a case would be like any other case in which a right to liberty was conferred by statute; the denial of such a right without due process of law violates the due process clause. E.g., *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985); *Pittman v. Chicago Board of Education,* 64 F.3d 1098, 1104 (7th Cir.1995).

Congress passed the immigration reform act as part of the Omnibus Consolidated Appropriations Act of 1997. That act is 1,927 pages long and contains no index. Section 309(c)(4)(C) appears on page 1,699. The provision of the Nurses Act that amended the section to eliminate an ambiguity that made it uncertain whether the new 30–day limit would apply to petitions for review filed within the first 180 days after the enactment of the reform act is part of a separate law, not part of the Omnibus Consolidated Appropriations Act. Both acts were "published" in the sense that Congress printed them up and made them available for distribution on the dates of their enactment. But when, in January 1997, the Board of Immigration Appeals having the previous month entered its final order of deportation against Torres, Torres' counsel researched his client's right of judicial review, West Publishing Company had not yet published the reform act in or as a supplement to the *United State Code Annotated.* And a search of the Immigration and Nationality Act on either Westlaw or Lexis–Nexis (or both), the standard computerized databases for legal research, would not have disclosed that the 90–day provision had been repealed. A search of Westlaw's Public Laws database would have revealed both the Omnibus Consolidated Appropriations Act and the Extension of Stay in the United States for Nurses Act, but neither of these titles would have alerted the reader to the fact that the acts had changed the period within which to seek judicial review of orders under the immigration laws, although the full title of the Nurses Act does imply a connection to immigration.

 The idea of secret laws is repugnant. People cannot comply with laws the existence of which is concealed. But it is an impermissible leap to conclude that Congress is under a constitutional duty to take measures, whether by indexing a new statute, or deferring the statute's effective date long enough to enable the contents of the statute to be widely disseminated, to make sure that no one is caught unawares by a change in law. The duty of fair notice of changes in law is a technical and qualified one. Many laws take effect on the date of enactment, without even the brief (30–day) grace period of section 309(c)(4)(C). Civil laws are sometimes (tax laws routinely) made retroactive, which means that they go into effect before publication; and this is allowed. Judge-made rules of law are frequently changed by judicial decision, and the change goes into effect on the date of the decision, *Harper v. Virginia Dept. of Taxation,* 509 U.S. 86, 96–97, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993)—which means before publication in the law reports. Ignorance of a statute is generally no defense even to a criminal prosecution, and it is never a defense in a civil case, no matter how recent, obscure, or opaque the statute. A defendant convicted of a crime created by a statute that took effect the day before he committed the crime would ordinarily have no defense of lack of fair notice, even if the enactment of the statute had received no publicity at all, so that the defendant had proceeded in warranted, perhaps indeed unavoidable, ignorance of it.

■ It is true that defendants are frequently estopped to plead the statute of limitations, and that sometimes the statute of limitations is tolled because the plaintiff was unable with all diligence to bring suit in time even though the defendant did nothing to interfere with his suing. But with minuscule exceptions, see *Osterneck v. Ernst & Whinney,* 489 U.S. 169, 179, 109 S.Ct. 987, 103 L.Ed.2d 146 (1989); *Hope v. United States,* 43 F.3d 1140, 1143 (7th Cir.1994); *Moore v. South Carolina Labor Bd.,* 100 F.3d 162, 163 (D.C.Cir.1996) (per curiam), the judge-made doctrines of estoppel and tolling are not applied to deadlines for taking appeals, even if the appellant (or, as here, the petitioner) was without fault in failing to appeal within the usually very short time (sometimes as short as 10 days) allowed for filing an appeal. See, e.g., Fed. R.App. P. 26(b); *Stone v. INS,* 514 U.S. 386, 405, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995); *Nowak v. INS,* 94 F.3d 390, 391 (7th Cir.1996); *Wakefield v. Railroad Retirement Bd.,* 131 F.3d 967, 970 (11th Cir.1997) (per curiam). None of these cases in which fair notice in a lay rather than legal sense was missing was held to present a constitutional issue, so why should Congress's (and the INS's) failure, regrettable though it surely is, to publicize a change in law sufficiently to communicate it to nonspecialists in the particular branch of law that has been affected by the change be thought to present a constitutional issue?

The petitioner is in effect contending for a rule that would toll the effective date of a new statute for as long as is necessary to enable an average practitioner to learn of a new statute and conform his client's conduct to it. It is a detail that here the new statute shortens the deadline for filing a petition for review. It would make no difference if it shortened the deadline for filing an application for a broadcast license or some other valuable permit, or imposed a civil penalty for dumping toxic wastes, or in any other way brought about a situation in which someone who did not learn about the statute until after it went into effect would incur a cost. Such a rule would inject a debilitating uncertainty into the determination of legal rights and duties. Of particular relevance here, it would make mincemeat of the time limits for commencing lawsuits, appeals, judicial reviews of administrative actions, and other legal proceedings. Any time one of these time limits changed, noncompliers would have an argument that the time limit should not be imposed on them because it had not been adequately publicized. The government's ability to enforce new statutes would depend on the celerity and accuracy of legal publishers.

The rule for which the petitioner contends is in any event unnecessary. The bar is professionally and financially motivated to keep abreast of all changes of law as they occur. Its needs in turn create a demand for prompt publication in the print and electronic media. In highly specialized fields of federal law, such as tax, antitrust, and immigration, a specialized bar keeps an eagle eye on Congress and is assisted by a specialized press that churns out newsletters, loose-leaf services, and other legal bulletins in both print and electronic formats. The modes of dissemination are not infallible. Not all specialized areas of law are occupied exclusively by specialists. Not all specialists (or generalists) are careful researchers. Not all subscribe to all the services. But the petitioner has given us no reason to suppose that the methods of acquainting the bar with changes in federal law are so deficient that we should craft a rule of tolling that would as greatly unsettle the law as the proposed rule would do. He does not even show—though we do not mean to suggest that such a showing would overcome our reservations—that no publication directed to the immigration bar carried the news of the change in law before his time to file a petition for review ran out in mid-January.

It is no surprise that the petitioner cannot cite, and our own research has not revealed, any case that recognizes the constitutional right—the due process fair notice tolling right—for which he contends. He cites cases that affirm that notice is an element of due process of law, e.g., *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950); cases that involve statutes which were never published in the *Statutes at Large* or the *United States Code, Armstrong v. Maple Leaf Apartments,*

*Ltd.,* 436 F.Supp. 1125, 1145–46 (N.D.Okla. 1977), aff'd. in part, 622 F.2d 466 (10th Cir. 1979); *United States v. Burgess,* No. 133066, 1987 WL 39092 at *7 (N.D.Ill.Dec.1, 1987); cases in which vague criminal statutes have been struck down, e.g., *Lambert v. California,* 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed.2d 228 (1957); and dicta to the effect that enacting a statute without a grace period *might* deprive the people affected by the statute of fair notice—but these cases *hold* that the plaintiff had in fact plenty of notice of the change in law. *Atkins v. Parker,* 472 U.S. 115, 130–31, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985); *Texaco, Inc. v. Short,* 454 U.S. 516, 532, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982); *Brown v. McGarr,* 774 F.2d 777, 785 (7th Cir.1985). The statutory change in issue here was made more than two months before the order affected by it was issued, and it was a technical procedural change addressed as a practical matter to the immigration bar rather than to the aliens whose procedural rights were affected by the change. It does not fit any of the classes of case to which the petitioner has directed us, and we cannot see how we can relieve him from the consequences of his lawyer's error without adopting a general rule requiring the publicizing of changes of law. Since the number of times that people have forfeited valuable rights because of changes in the law of which they had no knowledge or reason to know must be legion, the absence of precedent for the rule urged by the petitioner is striking. We conclude that the petition for review is indeed untimely and must therefore be

DISMISSED.