# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DALIP SINGH,
                *Petitioner,*

v.

ALBERTO R. GONZALES, Attorney
General,
               *Respondent.*

No. 04-72701

Agency No.
A77-424-559

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
May 17, 2006—San Francisco, California

Filed November 28, 2006

Before: Alex Kozinski and Raymond C. Fisher,
Circuit Judges, and Frederic Block,* Senior District Judge.

Opinion by Judge Fisher

---

*The Honorable Frederic Block, Senior United States District Judge for
the Eastern District of New York, sitting by designation.

18809

**COUNSEL**

Inna Lipkin, Law Office of Kuldip S. Dhariwal, Redwood City, California, for the petitioner.

Peter D. Keisler, Assistant Attorney General, Jeffrey J. Bernstein, Senior Litigation Counsel, Benedetto Giliberti, Attorney, and Joan Smiley (argued), Attorney, United States Department of Justice, Washington, D.C., for the respondent.

---

**OPINION**

FISHER, Circuit Judge:

The question posed by this case is whether an alien who in sworn affidavits claims that he never received notice of the BIA's adverse decision is entitled to reopening and reissuance of that decision so that he may timely appeal it to this court. More specifically, when the BIA uses regular mail to meet its regulatory obligation to serve its decisions on aliens, does the BIA's factual finding that its decision was properly mailed to the alien's address of record preclude the alien's claim that he did not actually receive the decision?

I.

Petitioner Dalip Singh is a 42-year-old native and citizen of India. On August 10, 1998, he entered the United States on a B-2 visitor's visa, which authorized him to remain in the United States until February 9, 1999. Some time before his visa expired and while still lawfully in the United States, Singh petitioned the immigration authorities for asylum, claiming persecution on account of religion (Sikh) and membership in a disfavored group (the Akali Dal Mann Party). Subsequently, Singh appeared at two immigration hearings, one on November 29, 2001 and the second on May 23, 2002.

At the conclusion of the May 23 hearing, the Immigration Judge (IJ) denied Singh all relief, and Singh thereafter timely appealed the IJ's adverse decision to the Board of Immigration Appeals (BIA). On October 7, 2003, the BIA issued its decision denying Singh's appeal in an order affirming the IJ without an opinion. Singh and his attorney of record, Khuldip Dhariwal, swear they did not receive notice of the decision.[1] The BIA contends, however, that it sent the decision by regular mail to Singh's counsel, whose correct address appears on the decision's transmittal cover sheet; the BIA acknowledges that the decision was not sent to Singh himself.

Singh contends that neither he nor his attorney learned of the BIA's October 2003 decision until February 2004, well after the time for Singh to file an appeal with this court had lapsed. *See* 8 U.S.C. § 1252(b)(1) (30-day time limit for filing petitions for judicial review); *Caruncho v. INS*, 68 F.3d 356, 359 (9th Cir. 1995) (statutory time limit is mandatory and jurisdictional); *see also Stone v. INS*, 514 U.S. 386, 394-95 (1995) (statutory time limit is not tolled by the filing of a motion to reopen or reconsider). On February 23, Dhariwal received a "bag and baggage order" from the Immigration and Naturalization Service,[2] directing Singh to appear for removal on March 2, 2004.[3] After Dhariwal phoned the BIA and was informed about its October 2003 denial of Singh's appeal, he promptly filed a motion to reopen with the BIA, requesting

---

[1] The factual allegations supporting Singh's and Dhariwal's claims that they did not receive notice of the October 2003 decision are taken from the motion to reopen and affidavits submitted to the BIA. Except as otherwise noted, the government does not contest these assertions.

[2] The INS has been abolished and its functions transferred to the Department of Homeland Security. *See* Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135, 2142 (2002), 6 U.S.C. §§ 101-557.

[3] The bag and baggage order was dated February 11, 2004. Such an order issues once the government determines that there is no further administrative relief available to an alien who is subject to an order of removal, and instructs the alien to appear at a specified location and time for removal.

that it reissue its decision so Singh could timely appeal to this court. Both Dhariwal and Singh attached affidavits to the motion to reopen, swearing under penalty of perjury that neither had received the Board's earlier decision. The BIA denied Singh's motion on April 28, 2004, stating, in full: "The respondent has filed a motion to reissue the Board's October 7, 2003, decision. The motion is denied, as the record reflects that the respondent's decision was correctly mailed to the respondent's attorney of record." Singh now petitions for review of the Board's denial of his motion to reopen.

## II.

We must decide whether the BIA abused its discretion in refusing to reopen and reissue its adverse October 2003 decision, given Singh's claim that he never received notice of that decision and therefore could not timely appeal it to this court on its merits.[4] To succeed on his claim that the BIA abused its discretion, Singh must establish that the BIA failed to comply with the terms of its own regulations. *See Iturribarria v. INS*, 321 F.3d 889, 895 (9th Cir. 2003). He cannot do so, and thus his petition for review must be denied.

[1] The regulations governing the BIA's obligation to give notice of its decisions provides that "[t]he decision of the Board . . . shall be served upon the alien or party affected . . . ." 8 C.F.R. § 1003.1(f).[5] Service, in turn, is defined as "physically presenting or *mailing* a document to the appropriate party or parties." 8 C.F.R. § 1003.13 (emphasis added).

---

[4]We review for abuse of discretion the BIA's denial of a motion to reopen. *Salta v. INS*, 314 F.3d 1076, 1078 (9th Cir. 2002). The BIA abuses its discretion if it acts "arbitrarily, irrationally or contrary to law." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) (internal quotation marks omitted).

[5]The government argued in its briefing and at oral argument before us that 8 U.S.C. § 1229(a)(1) was applicable. But that section clearly covers only "notice[s] to appear," not notice of the BIA's decision. This difference is critical as we explain later.

**[2]** When the Board relies on service by mail, it must establish that the document placed in the mail was correctly addressed to the alien's (or his counsel's) address of record. *See Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996). In *Martinez-Serrano*, the BIA had mailed its decision denying an alien's motion to reopen to an old address, even though it had been properly notified of counsel's new address. The BIA learned of its mistake one month later and mailed the decision to the correct address. The alien petitioned this court for review of the Board's denial more than 90 days after the date of the incorrectly addressed mailing, but within 90 days of the BIA's subsequent, corrected mailing.[6] The government argued that we were without jurisdiction to review the BIA's denial of the motion to reopen because the alien's petition for review was filed more than 90 days after the BIA first mailed its decision. Rejecting the government's contention, we relied on *Zaluski v. INS*, 37 F.3d 72, 73 (2d Cir. 1994) (per curiam), which held that "the BIA's regulations . . . specify that decisions be mailed to the appropriate party" and "the decision was not mailed to the appropriate party until it was directed to the address duly recorded with the BIA." *Martinez-Serrano*, 94 F.3d at 1258-59. Reasoning that "the petitioner should not be penalized for the BIA's failure to comply with the terms of the federal regulations," we concluded that the "[t]ime for filing a review petition begins to run when the BIA complies with the terms of federal regulations by mailing its decision to petitioner's [or his counsel's] *address of record.*" *Id.* at 1259 (quoting *Zaluski*, 37 F.3d at 73) (emphasis added) (second alteration in original).

Under the clear terms of the regulations then, as interpreted by this court, the BIA does not effectuate service if it fails to mail its decision to the party's correct address of record. This is the framework under which we analyze Singh's claims that he is entitled to relief if he can show he did not in fact receive

---

[6]At the time *Martinez-Serrano* was filed, aliens had 90 (rather than 30) days to petition for review of the BIA's decision. *See id.* at 1258.

notice of the Board's decision. In order to prevail on his petition for review, Singh must establish that the BIA failed to fulfill its regulatory or legal obligations with respect to its October 2003 decision.

## III.

### A.

[3] Singh's allegation of nonreceipt suggests that he might be claiming the decision was never mailed at all, much less to the correct address. If true, that would violate 8 C.F.R. § 1003.1(f) on its face. The BIA found, however, that the decision "was correctly mailed" to Singh's attorney, and we review this factual finding for substantial evidence. *See Hamoui v. Ashcroft*, 389 F.3d 821, 826 (9th Cir. 2004). We "must uphold the BIA's finding unless the evidence compels a contrary result." *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003). Singh has offered only his affidavits suggesting that the decision was not mailed by the BIA, and the BIA points to the properly addressed transmittal sheet of its October 2003 decision as evidence that it was. *See Haroutunian v. INS*, 87 F.3d 374, 375 (9th Cir. 1996) ("The cover letter was dated June 17, 1994, and we presume that the final order of deportation was mailed on that date."). Given this record, sparse as it is, we are unable to conclude on the basis of Singh's affidavits alone that the BIA's finding was not supported by substantial evidence.

### B.

[4] Singh argues that his allegation of nonreceipt, supported by his affidavits and course of conduct, should equitably toll the filing deadline for petitioning this court. Had the BIA failed to comply with its regulations, this argument would have had merit. But Singh equates the BIA's obligation to "serve" with actual delivery. Singh's position is a reasonable one because service is generally understood to mean delivery.

*See* Black's Law Dictionary 1399 (8th ed. 2004) (defining serve as "1. To make legal delivery of (a notice or process) . . . ; 2. To present (a person) with a notice or process as required by law"). Indeed, the BIA's own definition of service requires the BIA either to "physically present[ ]" its decision (ensuring the alien actually receives it) or to mail its decision. 8 C.F.R. § 1003.13. These two methods of service are of equal significance only if one presumes receipt from mailing. Significantly, prior to the 1996 amendments to the United States Code, the BIA was required to mail its decision using *certified* mail, which provided documentation of actual delivery. *See* 8 U.S.C. §§ 1252b(a)(1), (f)(1) (1995); *see also In re Grijalva*, 21 I. & N. Dec. 27, 32 (BIA 1995). Thus, the BIA's mailing of its decision by certified mail to an alien was roughly equivalent to physically presenting the decision to the alien. Congress, however, amended the statute in 1996 to allow the BIA to send its decision by *regular* mail. *See* 8 U.S.C. § 1229(a)(1) (1996). And because the BIA retained its regulations authorizing service by "mailing," it appears that regular mail suffices even though it does not generate any confirmation by the U.S. Postal Service that the mail actually got through. Consequently, unless there is some regulatory or other legal requirement that the BIA affirmatively demonstrate that Singh actually received the Board's October 2003 decision, his sworn allegations of nonreceipt are legally insufficient. Singh has not called our attention to any such requirement and we have not found any.

Our decision in *Salta v. INS*, 314 F.3d 1076 (9th Cir. 2002), adopted a rebuttable presumption of receipt when an alien cannot show that the Board failed to mail its decision to the correct address. Under *Salta*, the alien thus has the opportunity to demonstrate factually that he did not receive the decision, thereby warranting the Board's reopening the matter. *Salta*, however, arose in a different context, addressing what an alien must allege to be entitled to rescission of an in absentia order of removal under 8 U.S.C. § 1229a(b)(5). *See id.* at 1077-78. The INS had mailed notice of the alien's removal

hearing using regular mail rather than certified mail as had been previously required. Salta claimed she never received notice of the hearing and was entitled to have the in absentia removal order rescinded. The IJ disagreed, relying on the strong presumption that public officers, including the postal workers, properly discharge their duties. We noted that the IJ's presumption of effective service by mail derived from *In re Grijalva*, in which the BIA had stated:

> We find that in cases where service of a notice of a deportation proceeding is sent by *certified* mail through the United States Postal Service and there is proof of attempted delivery and notification of certified mail, a strong presumption of effective service arises. There is a presumption that public officers, including Postal Service employees, properly discharge their duties. A bald and unsupported denial of receipt of certified mail notices is not sufficient to support a motion to reopen to rescind an in absentia order. . . .
>
> This presumption of effective service may be overcome by the affirmative defense of nondelivery or improper delivery by the Postal Service. However, in order to support this affirmative defense, the respondent must present substantial and probative evidence such as documentary evidence from the Postal Service, third party affidavits, or other similar evidence demonstrating that there was improper delivery.

21 I. & N. at 37 (emphasis added) (internal citations omitted). Because the INS had not used certified mail, however, we concluded that the IJ relied on the wrong standard in denying Salta's defense of nonreceipt. Rather, "[a]lthough it is still proper to presume that postal officers properly discharge their duties, delivery by regular mail does not raise the same 'strong presumption' as certified mail, and less should be

required to rebut such a presumption." *Salta*, 314 F.3d at 1079. We remanded to the IJ to determine if certain conditions were satisfied (including the alien's submission of an affidavit attesting to nonreceipt) that would entitle Salta to an evidentiary hearing on whether notice was in fact received. *See id.* at 1079-80.

**[5]** But *Salta* is inapposite. Section 1229a(b)(5) requires the immigration judge to enter an in absentia removal order when an alien fails to appear for a hearing. The order may be rescinded if the alien demonstrates "that she did not receive notice of the removal hearing." *Id.* at 1078 (citing 8 U.S.C. § 1229a(b)(5)(C)). There is no comparable statutory provision with respect to notice of BIA decisions that would require excusing an alien's delinquency in failing to timely file a petition for review because of his asserted nonreceipt of notice. As we have already explained, to satisfy its regulatory obligation to accomplish service of its decision, the BIA is required only to mail the decision to the alien's address of record.[7] *Cf. Radkov v. Ashcroft*, 375 F.3d 96, 99 (1st Cir. 2004) ("The time for filing a review petition begins to run when the BIA complies with the terms of the applicable regulations by mailing its decision to a petitioner's address of record. Even if, as the petitioners contend, the mailing in this case somehow went awry without any fault on the part of the BIA, that circumstance alone would not excuse the failure to file a timeous motion to reopen." (internal citations omitted)); *Nowak v. INS*, 94 F.3d 390, 392 (7th Cir. 1996) ("Neither [*Zaluski v. INS*, 37 F.3d 72 (2d Cir. 1994), nor *Ouedraogo v. INS*, 864 F.2d 376 (5th Cir. 1989),] suggests that the time [in which to file a petition for review] is extended when the agency sends

---

[7]We have recognized differing standards in the removal hearing context as compared to the BIA decision/petition for review context: "[T]here is a significant difference between initiating deportation proceedings in absentia and declining to hear an absent alien's petition for review of proceedings in which he fully participated." *Antonio-Martinez v. INS*, 317 F.3d 1089, 1092-93 (9th Cir. 2003).

a notice that miscarries in the mails; indeed, both strongly
imply the contrary, for they rest on the premise that, because
a regulation requires the Board to send notice of its decisions,
the time for filing a review petition begins to run when the
BIA complies with the terms of federal regulations by mailing
its decision to petitioner's address of record." (internal quota-
tion marks and citation omitted)). Under these circumstances,
we do not believe it appropriate to adopt the rebuttable pre-
sumption regime set forth in *Salta* as a qualifier to the Board's
service obligations set forth in 8 C.F.R. §§ 1003.1(f) and
1003.13.

In addition to compliance with the regulations that require
service, the BIA of course must not mislead an alien as to the
status of his appeal or the time limit for filing a petition for
review. *See Singh v. INS*, 315 F.3d 1186, 1188 (9th Cir. 2003)
("[W]here there has been official misleading [by the court or
the BIA] as to the time within which to file a notice of appeal,
the late notice may be deemed to have been constructively
filed within the jurisdictional limits." (citing *Hernandez-
Rivera v. INS*, 630 F.2d 1352, 1355 (9th Cir. 1980)). Singh
has not argued that the BIA misled him in any respect.

**[6]** We therefore must conclude that Singh has not pres-
ented any evidence to show that the Board abused its discre-
tion in declining to reopen his appeal and reissue its October
2003 decision. In so holding, we recognize that this places the
burden on the alien and his counsel to be vigilant in checking
the status of his case. According to the parties' briefs, the BIA
has provided a hotline for aliens to call to determine whether
a decision has been issued. Indeed, Singh's counsel confirmed
that a decision had been rendered by the BIA by calling this
hotline. *Cf. Nowak,* 94 F.3d at 391 (observing that "aliens
who distrust the Postal Service must check with the Board
every so often, just as litigants in district court must check
periodically with the clerk . . . .").

Requiring such vigilance is not unique to this context. For
example, in a civil proceeding before the district court where

the United States is a party, the parties have 60 days to file a notice of appeal, and 30 days from this deadline to seek an extension of time to file the notice. *See* Fed. R. App. P. 4(a)(1)(A). In *Alaska Limestone Corp. v. Hodel*, 799 F.2d 1409, 1411 (9th Cir. 1986) (per curiam), we refused to excuse noncompliance with these time limits even if the district court clerk failed to notify counsel of the entry of final judgment, because "[a] party has an independent duty to keep informed and mere failure of the clerk to notify the parties that judgment has been entered does not . . . warrant an extension of time." *Id.* at 1412; *see also Mennen Co. v. Gillette Co.*, 719 F.2d 568, 570 (2d Cir. 1983) (holding that, in the context of Rule 77(d), "it is customarily the duty of trial counsel to monitor the docket and to advise himself when the court enters an order against which he wishes to protest.").

## IV.

**[7]** There may be situations where serious due process concerns are implicated by the BIA's refusal to reopen and reissue, when it is undisputed that the alien neither received the decision nor had the ability to verify independently that a decision has been rendered. *See Farhoud v. INS*, 122 F.3d 794, 796 (9th Cir. 1997) ("The Due Process Clause protects aliens in deportation proceedings and includes the right to a full and fair hearing as well as notice of that hearing."). Under these circumstances, aliens may have to rely on the BIA's sua sponte authority to reopen a proceeding under 8 C.F.R. § 1003.2(a). *See In re X-G-W-*, 22 I. & N. Dec. 71, 73 (1998) (en banc) ("[T]he Board retains limited discretionary powers under [8 C.F.R. § 1003.2(a) of] the regulations to reopen or reconsider cases sua sponte in unique situations where it would serve the interest of justice."), *superseded on other grounds by In re G-C-L-*, 23 I. & N. Dec. 359 (2002). Of course Singh's case does not present such a situation and his due process rights were not violated. *See Farhoud*, 122 F.3d at 796 (rejecting an alien's due process claim because notice was mailed to the alien's address of record pursuant to the

applicable statute and "due process is satisfied if service is conducted in a manner 'reasonably calculated' to ensure that notice reaches the alien") (quoting *United States v. Estrada-Trochez*, 66 F.3d 733, 736 & 736 n.1 (5th Cir. 1995)). Nonetheless, we cannot help noting that potential inequities and needless expenditure of administrative and judicial resources could be readily avoided if the BIA simply mailed its decisions by *certified* mail, thereby providing clear proof of actual mailing and delivery.

## V.

The BIA was obliged to mail its decision to Singh's correct address of record. Singh's affidavits alleging nonreceipt and implying nonmailing are insufficient to overcome the BIA's factual finding — based on the transmittal sheet's evidence of mailing — that the decision was properly mailed. Therefore, the BIA did not abuse its discretion in denying Singh's motion to reopen, and Singh has not established a violation of due process.

PETITION FOR REVIEW DENIED.