In the

# United States Court of Appeals

## For the Seventh Circuit

No. 07-1417

SIMEON GABEROV,

*Petitioner,*

*v.*

MICHAEL B. MUKASEY, Attorney General
of the United States,

*Respondent.*

Petition for Review of an Order
of the Board of Immigration Appeals.
No. A71-468-783

ARGUED NOVEMBER 27, 2007—DECIDED FEBRUARY 19, 2008

Before MANION, EVANS, and SYKES, *Circuit Judges.*

EVANS, *Circuit Judge.* Simeon Gaberov applied for
asylum based on his alleged persecution by the com-
munist party in his native Bulgaria. The immigration
judge (IJ) denied the application, and Gaberov timely
appealed. The Board of Immigration Appeals (BIA) af-
firmed the IJ's decision without opinion and claims to have
mailed an appropriate notice to Gaberov's attor-
ney. Gaberov, however, asserts that neither he nor his
attorney ever received a decision regarding his case. The
only communication they received was a letter addressed
to Gaberov's attorney containing a decision for an unre-
lated individual, Elena Endriuliene. Years later, Gaberov
received a "bag and baggage" letter, instructing him to

report for deportation. He subsequently filed a motion to reopen, alleging the foregoing facts and offering the Endriuliene decision as evidence that he never received proper notice. The BIA denied the motion as untimely. Gaberov then filed a motion to reconsider, which the BIA also denied. He now petitions for review.

Gaberov, a 67-year-old native and citizen of Bulgaria, was admitted to the United States in June 1990 as a nonimmigrant visitor for pleasure and was authorized to remain in the country for 6 months. In September, he filed an application for asylum with the former Immigration and Naturalization Service (INS),[1] claiming that he had suffered and would continue to suffer persecution by the communist party in Bulgaria. According to Gaberov, his persecution began while he worked as a mechanic in a government-owned factory in Blagoevgrad. Gaberov and a coworker, Ivan Svetetsov, established a branch of a labor union at their place of employment to oppose the mistreatment of workers. As a result, the two men were transferred to separate cities and ultimately fired. Svetetsov successfully brought legal action against his former employer but was found dead by hanging soon after. Upon learning of Svetetsov's apparent murder, Gaberov left for the United States.

The INS declined to grant Gaberov's application for asylum in January 1996.[2] At that time, the INS filed an order to show cause (OSC) with the immigration court

---

[1] On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice. Its enforcement functions were transferred to the Department of Homeland Security's (DHS) Immigration and Customs Enforcement (ICE). Its service functions were transferred to DHS's Citizenship and Immigration Services (CIS).

[2] We are not told why it took the INS more than 5 years to address Gaberov's application.

in Chicago, stating that Gaberov was subject to deportation for having remained in the United States beyond the time authorized. In May, Gaberov appeared before the IJ without counsel, and the hearing was rescheduled to enable Gaberov to find representation. In September, Gaberov appeared with his attorney, Alexander Vrbanoff, and admitted the allegations in the OSC.

In July 1998, the IJ issued a decision denying Gaberov's application for asylum and withholding of deportation but granting him voluntary departure. Gaberov filed a timely notice of appeal with the BIA. While his appeal was pending, Gaberov retained new counsel because his former attorney was suspended from practicing law. Gaberov's new attorney, Tzvetelina Boynovska, filed a notice of entry of appearance with the BIA and requested that all materials be mailed to her office.

On June 13, 2002, the BIA affirmed without opinion the IJ's decision. The cover letter for the BIA's decision indicates that it was mailed on that date to the address provided by Boynovska. According to Gaberov, however, neither he nor his counsel ever received notice of the decision. The only communication they received from the BIA was a cover letter addressed to Boynovska dated June 13, 2002, along with the decision in a case involving an unrelated individual, Elena Endriuliene. Gaberov now asserts that, upon receiving the notice, Boynovska contacted the BIA but was informed that Gaberov's appeal was still pending. He also claims that Boynovska and he went to the Chicago CIS office shortly thereafter. There, they were assured that Gaberov could not be deported because the decision he received did not refer to his name or the number of his case. Thus, Gaberov continued to wait for his decision.

In December 2002, Gaberov married Stefka Milkova, a United States citizen with whom he began a romantic

relationship in 1997. Milkova subsequently filed an I-130 visa petition on behalf of Gaberov. In June 2005, Gaberov and Milkova appeared before CIS Officer Lisa Ubaldo for adjudication of the petition. During the interview, Gaberov presented the notice he received from the BIA. According to Gaberov, Ubaldo informed the couple that, although it appeared that the BIA had issued a decision in Gaberov's case, it was not binding because he received insufficient notice. As a result, Ubaldo did not execute the final order of removal against Gaberov. Instead, she approved the I-130 petition, finding that Milkova and Gaberov's marriage was *bona fide*.

Later that month, Gaberov received a "bag and baggage" letter from the ICE, advising him to appear at their Chicago office completely ready for deportation on September 8. This came as quite a surprise to Gaberov after his conversation with Ubaldo. So, he filed an I-246 application to stay his deportation. Nevertheless, Gaberov followed instructions and appeared at the Chicago office twice for his "bag and baggage" appointments. On the second occasion, Gaberov's I-246 application was granted because CIS officers determined that he was not properly notified of the BIA's decision.

In April 2006, Gaberov filed a motion to reopen with the BIA, alleging that he was now eligible for an adjustment of status based on his approved visa application. Gaberov argued that he never received notice of a decision in his case from the BIA and attached the Endriuliene decision as evidence. Gaberov also asked the BIA to exercise its discretion and grant his motion because of the favorable factors present in his case. Specifically, Gaberov's wife suffers with a permanent back injury and needs his care. He also has a close relationship to his son, Vasil, a lawfully permanent resident, Vasil's wife, Stella, and their citizen children, Rosemary and Simon. During his 17 years in the United States, Gaberov

has run his own construction business, paid his taxes, and never had any adverse contact with law enforcement. The BIA denied the motion to reopen as untimely, briefly citing to 8 C.F.R. § 1003.2(c)(2) and making no mention of the defective notice.

Gaberov subsequently filed a timely motion to reconsider, realleging nonreceipt of the BIA's June 13, 2002, decision and the special circumstances of his case. He also set forth facts relating to his visa application and Officer Ubaldo's determination that he had been provided with insufficient notice. Gaberov offered several documents as evidence, including the approved I-130 visa application and the Endriuliene decision. The BIA denied the motion to reconsider, concluding that Gaberov "was on notice in 2002 that a Board decision had been issued in his case." Despite Gaberov's submission of the Endriuliene decision and cover letter, the BIA found that "[t]here is no affidavit or other evidence from former counsel disclaiming receipt of the Board's decision." The BIA also declined to equitably toll the filing period because Gaberov failed to establish due diligence in ascertaining the status of his appeal.

We review the BIA's denial of a motion to reconsider for an abuse of discretion. *Laboski v. Ashcroft*, 387 F.3d 628, 631 (7th Cir. 2004). The BIA's legal findings are reviewed *de novo*, but we give deference to the BIA's construction of the statutes it administers. *Marquez v. I.N.S.*, 105 F.3d 374, 378 (7th Cir. 1997). Gaberov argues that the BIA committed one of two errors: (1) determining that his motion to reopen was untimely filed, or (2) declining to equitably toll the time limitations for filing a motion to reopen.

The first issue is whether the BIA correctly concluded that Gaberov's motion to reopen was untimely filed. The parties agree that a motion to reopen must ordinarily

be filed within 90 days of the date on which the final administrative decision was rendered in the proceedings sought to be reopened. *See* 8 C.F.R. § 1003.2(c)(2). Because Gaberov did not file his motion to reopen until April 2006—almost 4 years after the BIA's June 2002 decision—it will be untimely unless an exception applies. *See id.* § 1003.2(c)(3).

Gaberov argues that his case falls under the exception for a motion to reopen "[f]iled pursuant to the provisions of § 1003.23(b)(4)(iii)(A)(2)." *Id.* § 1003.2(c)(3)(i). We disagree. That section, titled "Order entered in absentia in deportation or exclusion proceedings," states that "[a]n order entered in absentia in deportation proceedings may be rescinded only upon a motion to reopen filed . . . [a]t any time if the alien demonstrates that he or she did not receive notice[.]" Although there is strong evidence that Gaberov did not receive notice, the exception does not apply because he did not seek to reopen an *in absentia* deportation order. In fact, Gaberov does not allege that he ever received an *in absentia* order. Rather, he argues that the exception applies to all motions to reopen. His attempt to construe the statute differently is not persuasive. The plain language of the provision indicates that it only applies to motions to reopen *in absentia* deportation orders. Thus, the BIA correctly determined that Gaberov's motion to reopen was untimely.

The second issue is whether the BIA erred when it declined to equitably toll the time limitations for filing a motion to reopen. The 90-day deadline is a statute of limitations and therefore subject to equitable tolling. *Pervaiz v. Gonzales*, 405 F.3d 488, 490 (7th Cir. 2005). To obtain relief, a petitioner must first show that his situation warrants equitable tolling, which, in turn, requires a showing of due diligence. *Patel v. Gonzales*, 442 F.3d 1011, 1016 (7th Cir. 2006). The test for equitable tolling is not the length of the delay but "whether the claimant

could reasonably have been expected to have filed earlier." *Pervaiz*, 405 F.3d at 490.

Gaberov argues that his situation warrants equitable tolling because the BIA never sent him notice of its June 13, 2002, decision. Federal regulations provide that "[t]he decision of the Board . . . shall be served upon the alien or party affected." 8 C.F.R. § 1003.1(f). "Service" is defined as "physically presenting or mailing a document to the appropriate party or parties." *Id.* § 1003.13. In his motions to reopen and reconsider, Gaberov alleged that neither he nor his attorney received a decision regarding his case. As evidence, Gaberov submitted the Endriuliene decision along with the cover letter addressed to his counsel.

When it denied Gaberov's motion to reconsider, however, the BIA gave only cursory mention to these documents. Although it conceded that Gaberov's evidence, "if true, could be construed as demonstrating a violation of the regulation," it found that Gaberov's failure to submit affidavits in support of his allegations was essentially fatal to his claim. On this point, the BIA relied heavily on a Ninth Circuit case, *Singh v. Gonzales*, 469 F.3d 863 (9th Cir. 2006). There, the court denied review even though Singh and his attorney attached affidavits to the motion, swearing that they had never received the BIA's decision. That opinion, however, has been withdrawn and a superseding opinion, *Singh v. Gonzales*, 494 F.3d 1170 (9th Cir. 2007), has been filed.

In the superseding opinion, the Ninth Circuit granted Singh's petition for review. It found that "[t]he BIA is obligated to consider and address in its entirety the evidence submitted by a petitioner, and where its failure to do so could have affected its decision, remand is appropriate." *Id.* at 1172 (internal citation omitted). The court also stated that, while a properly addressed cover

letter creates a presumption of mailing on the date of the cover letter, such a presumption can be rebutted by sufficient evidence—there, by affidavits of nonreceipt by both Singh and his counsel. In its discussion, the court distinguished cases where the *sole* evidence before the BIA was the properly addressed cover letter. Thus, *Singh* does not support the BIA's finding that Gaberov is ineligible for equitable relief due to his failure to submit affidavits in addition to other evidence.

In fact, the regulations state that a motion to reopen proceedings before the BIA "shall be supported by affidavits or other evidentiary material." 8 C.F.R. § 1003.2(c)(1).[3] Here, Gaberov alleged misdelivery and attached the Endriuliene decision and cover letter as evidence. Gaberov's possession of the decision for an unrelated individual along with a cover letter addressed to his attorney is strong evidence that the BIA violated the notice regulations. Admittedly, his case would have been even stronger if he had *also* submitted affidavits, but his failure to do so was not fatal to his claim. *Cf. Laboski v. Ashcroft*, 387 F.3d 628 (7th Cir. 2004) (finding that the BIA did not abuse its discretion in determining that the petitioner failed to timely appeal where he submitted *no* evidence (an affidavit or a postmark) to support his claim that the decision was not mailed on the date indicated on the cover letter).

The BIA also found that Gaberov did not show due diligence, again relying on the superseded *Singh* decision as well as two of our decisions, *Patel v. Gonzales*, 442 F.3d 1011 (7th Cir. 2006), and *Nowak v. I.N.S.*, 94 F.3d 390 (7th Cir. 1996). The language from the *Singh* decision is

---

[3] In its brief, the government directed us to a different statute, 8 C.F.R. § 1003.23(b)(3), which actually refers to proceedings before the immigration court, not the BIA.

absent from its superseding opinion, so we will not discuss it. As for our two cases, we think they are distinguishable. In *Patel*, we denied a petition for review where a petitioner filed a motion to reopen a year and a half after her sister received notice that her entire family was under a final order of deportation. Here, however, the decision Gaberov received pertained to a completely unrelated individual. Thus, it was certainly not clear that Gaberov was "on notice" in June 2002 that a decision had been rendered in his case. In *Nowak*, we stated that "aliens who distrust the Postal Service must check with the Board every so often" to determine whether it has issued a final decision. *Id.* at 391. There, however, we were analyzing a "jurisdictional" rule, which is not subject to equitable tolling.

The BIA emphasized the length of the delay in finding no due diligence. Notably, it found that Gaberov "waited almost 4 years to hold this Board accountable for an alleged procedural error of which he had notice in 2002 and which could have been remedied in a timely fashion." The record does not come close to supporting this finding. Gaberov alleges that immediately upon receiving the Endriuliene decision he contacted the BIA and was told that his appeal was still pending. He also asserts that he and his attorney went to the Chicago CIS office where they were assured that Gaberov could not be deported because the decision he received did not refer to his name or case number.

Even discounting these allegations, Gaberov presented other evidence of due diligence. In particular, he detailed his effort to clarify the relevance of the notice by presenting it to a DHS officer during his visa interview. At that time, the interviewing officer informed Gaberov that, although it appeared that the BIA had issued a decision in his case, it was not binding because he received insufficient notice. Consequently, the officer did not execute

the final order of removal against Gaberov and approved his I-130 application, which Gaberov submitted as evidence. Gaberov also claimed that he presented the notice to DHS officers at his "bag and baggage" appointment. Because those officers determined that Gaberov was entitled to relief, they granted his I-246 application and did not deport him.

The BIA rejected this evidence in a footnote, stating that "[t]he alleged actions of the DHS officers are irrelevant to the instant inquiry." We disagree. First, these events show that Gaberov was acting with due diligence in trying to ascertain the status of his claim and the effect of the notice. Second, the events support a claim for equitable tolling because they explain why Gaberov did not file a motion to reopen sooner. His reliance on the DHS officers' (erroneous) assurances that the notice he received was not binding was reasonable.[4] Gaberov does not allege that the officers deliberately lied to him, but this is unnecessary. Unlike with equitable estoppel, the opposing party's conduct need not rise to the level of "affirmative misconduct" for an equitable tolling theory to prevail. *Socop-Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184-85 (9th Cir. 2001).

At oral argument, the government stressed that, whatever happened previously, Gaberov waited too long (9 months) after receiving his "bag and baggage" letter to file his motion to reopen. First, we note that Gaberov initially accepted his fate and appeared in good faith for deportation in September. Only after he was told that he would not be deported could he realistically have

---

[4] We can hardly fault Gaberov for failing to understand that "[v]isa petitions are adjudicated regardless of the finality of [the BIA's] order, and [the BIA] has no jurisdiction to consider the discretion of the DHS as to its enforcement policies."

been expected to file a motion to reopen. This makes the delay 7 months. Gaberov argued that he needed this time to find another lawyer and to allow that lawyer to investigate. In *Pervaiz*, we noted that finding another lawyer, who, in turn, had to research the facts and law before filing a motion, should not take 9 months. However, we went on to recognize that the petitioner was "a foreigner who may, therefore, have more than the average difficulty in negotiating the shoals of American law." *Pervaiz*, 405 F.3d at 491. We believe these words to be equally applicable to our case.

Gaberov came to the United States as an approved visitor and filed an application for asylum. When his application was finally denied 8 years later, he timely appealed and waited for his decision. More than 3 years after that, Gaberov received a decision for a completely unrelated individual. He attempted to ascertain its relevance and was told by DHS officers that his appeal was still pending. Gaberov again attempted to determine the meaning of the defective notice but was told by DHS officers that it was not binding on him and that he could not be deported. When he received a "bag and baggage" letter, Gaberov was shocked and saddened that he would have to leave his wife, children, and grandchildren, but he dutifully reported for deportation. Instead of being deported, however, he was told by DHS officers that the faulty notice entitled him to relief. Gaberov then hired an attorney and filed a motion to reopen, attaching evidence that he received inadequate notice and could not reasonably have been expected to have filed earlier.

These facts warrant equitable tolling, so Gaberov's motion to reopen should have been granted. The BIA has authority to reissue a decision if notice miscarries, *Firmansjah v. Ashcroft*, 347 F.3d 625 (7th Cir. 2003), which would allow Gaberov to pursue a status adjust-

ment. The BIA might consider granting such equitable relief on remand.

For the foregoing reasons, we GRANT the petition for review, REVERSE the judgment of the BIA, and REMAND for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*